**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF MARIO ADALBERTO MUÑOZ MADRID, aka EL CANICAS. | MJ-09-01603-TUC-BGM<br><br>**ORDER** |

On March 31, 2009, the Government filed its Complaint for Arrest With a View Towards Extradition (18 U.S.C. § 3184) [Doc. 1]. The Government, representing the United Mexican States, sought an arrest warrant for Mario Adalberto Munoz Madrid in accordance with 18 U.S.C. § 3184 and the Extradition Treaty between the United States and Mexico. *Id.* Mexico seeks Madrid's extradition on the basis of a second arrest warrant issued by the Fifth District Judge of Nogales, Sonora. Madrid is charged with possession of firearms for the exclusive use of the Mexican army, navy and air force and a drug related offense, specifically possession of methamphetamine.

On March 30, 2009, an Arrest Warrant was issued. Mario Adalberto Munoz Madrid was subsequently arrested by the United States Marshals on October 5, 2012. On October 10, 2012, an initial appearance for Madrid was held. On January 10, 2013, this Court held an extradition hearing. The Court finds and concludes that the Government's evidence is sufficient to sustain the charges under the provisions of the Treaty; that Madrid has not raised a viable defense to extradition; and that the requested person shall be certified to the United States Secretary of State for surrender to the government of Mexico.

. . .

## I.     EXTRADITION PROCEDURE

Section 3184, 18 U.S.C., outlines the procedure for extradition. It provides in relevant part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government . . . any magistrate judge authorized so to do by a court of the United States . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by the treaty or convention . . . issue his warrant for the apprehension of the person so charged[.]
>
> * * *
>
> If, on such hearing, [the magistrate judge] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . . he shall certify the same, together with a copy of all testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184. In the District of Arizona, magistrate judges shall "[c]onduct extradition proceedings in accordance with 18 U.S.C. § 3184 and 18 U.S.C. § 4108 regarding fugitives or offenders from a foreign country to the United States." LRCrim. 57.6(d)(15).

"An extradition court . . . exercises very limited authority in the overall process of extradition." *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006). "Extradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function." *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997) (citing *In re Metzger*, 46 U.S. (5 How.) 176, 188, 12 L.Ed. 104 (1847)). "After the warrant issues, the judicial officer conducts a hearing to determine whether there is 'evidence sufficient to sustain the charge under the provision of the proper treaty or convention,' . . . or, in other words, whether there is probable cause." *Vo*, 447 F.3d at 1237 (quoting *Boxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1207 (9th Cir. 2003)). "If the judicial officer determines that there is probable cause, he '*is required to certify* the individual as extraditable to the Secretary of State.'" *Id.* (quoting *Boxland*, 323 F.3d at 1208) (emphasis in original). "After an extradition magistrate certifies that an

individual can be extradited, it is the Secretary of State, representing the executive branch, who ultimately decides whether to surrender the fugitive to the requesting country." *Id.* (citations omitted). Accordingly, "[t]he authority of a magistrate judge serving as an extradition judicial officer is thus limited to determining an individual's eligibility to be extradited, which he does by ascertaining whether a crime is an extraditable offense under the relevant treaty and whether probable cause exists to sustain the charge." *Vo*, 447 F.3d at 1238 (citations omitted).

Regarding evidence or testimony, Section 3190, 18 U.S.C., provides:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered are authenticated in the manner required.

18 U.S.C. § 3190. As such, "unsworn statements of absent witnesses may be acted upon by the committing magistrate, although they could not have been received by him under the law of the state on preliminary examination." *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir. 1984) (citations omitted). "[T]o eliminate hearsay from extradition proceedings would run counter to one of the primary objectives of bilateral extradition treaties, namely, 'to obviate the necessity of confronting the accused with the witnesses against him; . . . [requiring] the demanding government to send its citizens to another country to institute legal proceedings would defeat the whole object of the treaty.'" *Id.* (citations omitted) (alterations in original).

## II. THE EXTRADITION TREATY

The United States and Mexico are signatories to an Extradition Treaty Between the United States of America and Mexico ("Treaty"). The purpose of the Treaty is to allow both countries "to cooperate more closely in the fight against crime and, to this end, to mutually render better assistance in matters of extradition." Treaty at 3. "Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and

are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year." Treaty, Art. 2 ¶ 1; *See also Emami v. United States Dist. Ct. for the Northern Dist. of Ca.*, 834 F.2d 1444, 1449-50 (9th Cir. 1987) (discussing principle of dual criminality, "[u]nder this principle, 'no offense is extraditable unless it is criminal in both jurisdictions." (citations omitted)). Moreover, "[e]xtradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place or to prove that he is the person convicted by the courts of the requesting Party." Treaty, Art. 3. "Extradition shall not be granted when the offense for which it is requested is political or of a political character." Treaty, Art. 5 ¶ 1; *See Vo*, 447 F.3d at 1240-45 (discussing the political offense doctrine). Additionally, "[e]xtradition shall not be granted when the offense for which extradition is requested is a purely military offense." Treaty, Art. 5 ¶ 3. The Treaty also provides that "[e]xtradition shall not be granted when the person sought has been prosecuted or has been tried and convicted or acquitted by the requested Party for the offense for which extradition is requested." Treaty, Art. 6. Neither shall extradition be granted "when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party." *Id.*, Art. 7.

"If an individual falls within a mandatory exception, the United States cannot extradite him to the requesting country and the magistrate may not certify him as extraditable." *Vo*, 447 F.3d at 1246. "If an individual falls within a discretionary exception, however, the United States can choose not to extradite him to the requesting country, but it is under no obligation to the relator to do so. When requested by the United States, the magistrate must certify an individual even though he may be subject to a discretionary exception." *Id.* "[A]n extradition court is without authority to prevent an extradition on the basis of a discretionary exception and thus *cannot* deny extradition on that basis." *Id.* (citations omitted) (emphasis in original).

## III. FACTUAL BACKGROUND[1]

On August 23, 2002, an anonymous telephone call was received at the Federal Public Prosecutor's office in the Municipality of Sonoyta, Sonora, in which a male person reported that in Ejido de Papagos, in the same municipality, MARIO ADALBERTO MUÑOZ MADRID, a.k.a. *EL CANICAS* was armed on board a dark-colored Jeep.

Due to this reason, on the same date at approximately 6:00 p.m., two agents of the Federal Police for Investigations assigned to Sonoyta, Sonora, went to the location in question, where they stopped a person who was driving a green Jeep Wrangler SUV with light brown doors, with license plates 912SWJ1. This person's name was MARIO ADALBERTO MUÑOZ MADRID.

When the police officers approached, and after inspecting MARIO ADALBERTO MUÑOZ MADRID, they found .38 caliber Super Colt Custom semiautomatic weapon, registration number ELCEN2439, chromed with wooden grips, made in the United States of America, with its magazine and nine .38 caliber Super loaded clips.

In addition, on the right side of the driver's seat inside the vehicle, the federal agents found a long weapon of those known as AK-47s (a Maadi-Co 7.62x39 mm caliber, made in Egypt), with two magazines fastened with gray adhesive tape, one with thirty and one with twenty-nine rounds. In addition, in the glove compartment the agents found three flasks, commonly known as pipes for crystal meth, and two lighters.

Due to the above, the officers of the Federal Agency for Investigation handed MARIO ADALBERTO MUÑOZ MADRID over to the Federal Public Prosecutor of the Municipality

---

[1] The factual background contained herein is as stated by Ambassador Arturo Sarukhan in his letter to Secretary Clinton, requesting extradition of Defendant ("Extradition Request"). The Court finds that this factual recitation is supported by the affidavits, letters and statements of Brenda Guadalupe Neblina Mendez, Trial Judge of the Judicial District of Puerto Peñasco, Sonora; Eliseo Puga Cervantes, Fifth District Judge in the State of Sonora; Jorge Luis Pineda Morales, Agent of the Federal Investigation Agency; Alejandro Perez Berni, Agent of the Federal Investigation Agency; and Mario Adalberto Muñoz Madrid, Defendant. *See* Govt's Exh. B, Mexican Numbered Exhibits 1-3 & 6-9.

of Sonoyta, Sonora, where they proceeded to inspect his belongings. In his right pants pocket they found two small wrappings made with white plastic, containing a white grainy substance, weighing nineteen grams and nine hundred milligrams. After this substance was analyzed, it was determined to be methamphetamine (crystal meth), is considered a psychotropic substance.

The investigations conducted by the Federal Public Prosecutor who gathered evidence for the case have been able to obtain a firearms and explosives identification report, in which the designated experts concluded that the firearms and the magazines seized are of the type reserved for the Exclusive Use of the Army, Navy and Air Force, as indicated in Article 11, sections b), c) and f) of the Federal Law on Firearms and Explosives.

The facts stated herein and the elements of proof obtained during their investigation led the Judge of First Instance for Civil and Criminal Matters of Puerto Peñasco, Sonora, to issue a formal order for the commitment of MARIO ADALBERTO MUÑOZ MADRID.

For jurisdictional reasons, the case against MARIO ADALBERTO MUÑOZ MADRID was turned over for follow-up to the Fifth District Court of Nogales, Sonora.

On September 18, 2002, MARIO ADALBERTO MUÑOZ MADRID escaped the correctional facility in which he was incarcerated. Thus, the Fifth District Judge of Nogales, Sonora issued a second warrant which is currently active and enforceable to secure his arrest.

Defendant is charged with "PORTACION DE ARMA DE FUEGO DE LAS RESERVADAS PARA EL USO DEL EJERCITO, ARMADA Y FUERZA AEREA; (*POSESSION [SIC] OF FIREARMS FOR THE EXCLUSIVE USE OF THE MEXICAN ARMY, NAVY AND AIR FORCE*) as defined by and punishable under Article 83 Sections II and III of the Federal Law on Firearms and Explosives, in relation to Article 11, sections b), c) and f) thereof; and CONTRA LA SALUD EN SU MODALIDAD DE POSESION DE METANFETAMINA (CRISTAL) (*DRUG RELATED OFFENSE, SPECIFICALLY POSSESSION OF METHAMPHETAMINE*) as defined by and punishable under Article 195, first paragraph of the Federal Penal Code." Extradition Request at 2.

**IV. ANALYSIS**

This Court has reviewed the authenticated documents submitted by the government of Mexico in support of its request, observed Madrid at the hearing, and heard testimony regarding fingerprint evidence and finds that there is probable cause to believe that Madrid committed the crimes with which he was charged.

***A. Jurisdiction***

This Court has jurisdiction to conduct an extradition hearing pursuant to 18 U.S.C. § 3184 and the local rules of this district. 18 U.S.C. § 3184; LRCrim. 57.6(d)(15). Madrid does not challenge the Court's jurisdiction over his person. Madrid was arrested within the State of Arizona by the United States Marshals on October 5, 2012, based upon an arrest warrant issued in this matter on March 30, 2009. *See* 18 U.S.C. 3184. As such, this Court finds that it has personal jurisdiction over Madrid.

***B. The Treaty and Charged Offenses***

As stated previously, the United States and Mexico are signatories to an Extradition Treaty Between the United States of America and Mexico. The charged offenses are extraditable pursuant to the Treaty. *See* Treaty, Appendix ¶¶ 14 & 19. Further, extradition is timely, the statute of limitations expires on April 10, 2015. Govt's Exh. B, Mexican Numbered Exhibit 4.

Madrid has been charged in the requesting state with Possession of Drugs, specifically methamphetamine, as defined by and punishable under Article 195, first paragraph of the Federal Penal Code of the State of Sonora; and Possession of Firearms for the Exclusive Use of the Mexican Army, Navy and Air Force, as defined by and punishable under Article 83, sections II and III of the Federal Law on Firearms and Explosives, in relation to Article 11, sections b, c and f. Possession of a controlled dangerous substance is a felony under the Controlled Substances Act. Section 844(a), 21 U.S.C., states that "[i]t shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless obtained by valid prescription. . . . Any person who violates this subsection may be sentenced to a term of imprisonment of not more than one year . . . ." Methamphetamine is a Schedule III

controlled substance. 21 U.S.C. § 812. Furthermore, in Arizona, possession or use of a dangerous drug, specifically methamphetamine (as defined in A.R.S. § 13-3401(6)(b)(xvii)), is a class 4 felony with a maximum term of imprisonment of three years. A.R.S. §§ 13-3407(A)(1) & 13-702.

Section 922(g), 18 U.S.C., mandates that it is unlawful

> for any person (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . [or] (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802); . . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g). Additionally, "any person who, during and in relation to any crime of violence or drug trafficking crime, . . . uses or carries a firearm, . . . (i) [shall] be sentenced to a term of imprisonment of not less than 5 years[.]" 18 U.S.C. § 924 (c)(1)(A).

"Dual criminality exists if the 'essential character' of the acts criminalized by the laws of each country are the same and the laws are 'substantially analogous.'" *Manta v. Chertoff*, 518 F.3d 1134, 1141 (9th Cir. 2008) (citing *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988)). Neither the names nor the elements need to be identical, "it is enough that the conduct involved is criminal in both countries." *Id.* (quoting *Oen Yin-Choy*, 858 F.2d at 1404-05 (citations omitted)). The Court finds that dual criminality exists, as the charged crimes are punishable in both Mexico and the United States. The Court further finds that Mexico seeks extradition of Madrid for trial on the charged offenses.

### C. *Identification*

Madrid asserted at the extradition hearing that the Government did not meet its burden to demonstrate that he is the one who was arrested in Mexico. Madrid's argument is without merit. The extradition packet provided by the Mexican government includes a statement from Madrid regarding his arrest in that country. *See* Govt's Exh. B, Mexican Numbered Exhibit 9. Additionally, the Government submitted fingerprint evidence demonstrating that the individual originally arrested in Mexico and Madrid are the same. *See* Govt's Exh. F.

The Court finds that this evidence, as well as the witness testimony, Madrid's physical appearance and photographs demonstrate that Madrid is the fugitive sought in this matter. Defendant has not asserted any other defenses at this time, and the Court finds that there are no other applicable defenses.

## V. CONCLUSION

The foregoing constitutes this Court's findings of fact and conclusions of law after a hearing. The Court concludes that there is probable cause to believe that Mario Adalberto Muñoz Madrid, aka El Canicas, committed the crimes with which he was charged and for which his extradition is sought. Accordingly, IT IS HEREBY ORDERED that the documentary evidence together with all transcripts of testimony and argument shall be certified to the Secretary of State, that a warrant may issue for the surrender of Madrid in accordance with the Extradition Treaty Between the United States of America and Mexico. The Clerk of the Court is directed to forward the certified record to the Department of State, to the attention of the Office of the Legal Adviser.

IT IS FURTHER ORDERED that Mario Adalberto Muñoz Madrid, aka El Canicas, shall remain in the custody of the United States Marshal for the District of Arizona pending final disposition of this matter by the Secretary of State and surrender to designated agents of the Government of Mexico.

DATED this 17th day of January, 2013.

_____
Bruce G. Macdonald
United States Magistrate Judge